UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ROBERTA A. DeANGELIS
UNITED STATES TRUSTEE, REGION 3
Peter D'Auria, Esquire (PD 3709)
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Fax: (973) 645-5993

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ | : | |
| In re | : | Chapter 7 |
| | : | |
| Scott and Ginnette Forbes, | : | Case No. 09-27371(NLW) |
| | : | |
| Debtors. | : | |
| _____ | : | |
| | : | |
| Roberta A. DeAngelis, | : | |
| United States Trustee, | : | |
| | : | Adv. Pro. No. 12-01032(NLW) |
| Plaintiff, | : | |
| | : | |
| v. | : | Honorable Novalyn L. Winfield |
| | : | |
| Scott Forbes, | : | TRIAL DATE:   July 17, 2013 at 10:00 a.m. |
| | : | |
| _____ | : | |

**<u>PLAINTIFF'S TRIAL BRIEF</u>**

The United States Trustee, by and through her counsel, in furtherance of her duties and

responsibilities under 28 U.S.C. § 586(a)(3) and (5), hereby respectfully submits this Trial Brief, in

support of the above-captioned adversary complaint, and respectfully represents as follows:

1

## PRELIMINARY STATEMENT[1]

1.      The Defendant's bankruptcy case was filed as a voluntary chapter 11 bankruptcy petition on July 3, 2009.   Three days later on July 6, 2009, the Defendant filed a voluntary chapter 11 bankruptcy case for Forbes Enterprises Corp, a then operating company that the Defendant owned and operated.   Forbes Enterprises Corp was a construction company generally in the business of building, repairing, improving, and working on houses.

2.      During the chapter 11 pendency of both the Defendant's Individual Case and the Forbes Enterprises Corp case, the Defendant caused a new company to be formed.   On or about December 1, 2009, a Certificate of Formation was filed with the New Jersey Department of Treasury, Division of Revenue, forming a new corporate entity, that entity being Forbes Custom Homes.   At the time Forbes Custom Homes was formed, the ownership of that entity was 10% owned by the Defendant, 90% owned by the Defendant's son who was at that time approximately 8-9 years old.

3.      On February 8, 2010, a hearing was held in the Forbes Enterprises Corp bankruptcy case.   At that hearing, the Court approved the sale of a piece of real property, 5 Oak Road, from Forbes Enterprises Corp to Michael Jarmark.   At that hearing, the Defendant testified that, in connection with the proposed sale, Forbes Enterprises Corp had an attendant contract with Jarmark to finish the construction of the house that was on that property, in an estimated amount of $200,000.00.   Jarmark was a client of then chapter 11 debtor Forbes Enterprises Corp.

4.      Also considered at the February 8, 2010 hearing was the then pending motion filed by the United States Trustee to convert the Forbes Enterprises Corp bankruptcy case to chapter 7.

---

[1] Capitalized terms contained in this Preliminary Statement that have not been previously defined shall have the meaning as ascribed in the Background section below.

2

The Forbes Enterprises Corp debtor opposed the UST's motion, the Court denied the UST's

motion, and that hearing concluded with Forbes Enterprises Corp continuing thereafter as a

chapter 11 debtor-in-possession case, in the shadow of the Defendant's testimony of the new

$200,000.00 Forbes Enterprises Corp contract to finish the 5 Oak Road house just sold to Jarmark.

5.      The Defendant did not inform the Court at the February 8, 2010 hearing, nor did he

disclose in any pleading, anything about the formation of Forbes Custom Homes.   On February

11, 2010, the Defendant filed a Plan of Reorganization and an accompanying Disclosure Statement

in his then pending chapter 11 individual case, which documents make no mention of Forbes

Custom Homes.

6.      On paper, Forbes Custom Homes was owned 90% in the name of the Defendant's

8-9 year old son, and only 10% by the Defendant.   In reality, Forbes Custom Homes was formed

by the Defendant with the intention for it to be an operating entity, an entity the Defendant would

operate and control.   The Defendant did in fact operate Forbes Custom Homes, which

commenced operations in the January – March 2010 time frame.

7.      The Defendant did work for Jarmark at the 5 Oak Road house sold by Forbes

Enterprises Corp, as previously contracted in the name of Forbes Enterprises Corp.   However,

shortly after the February 8, 2010 hearing, the Defendant entered into a construction contract with

Jarmark wherein the Defendant crossed-out Forbes Enterprises Corp, and the Defendant then

penned-in Forbes Custom Homes.   Despite the prior contract between Forbes Enterprises Corp

and Jarmark, as testified to by the Defendant at the February 8, 2010 hearing, Forbes Enterprises

Corp never received any money from Michael Jarmark in connection with the work done to

complete the house.   But rather, from February 27, 2010 through May 19, 2010, the Defendant

deposited funds received from Jarmark for work done on the 5 Oak Road house in the aggregate

amount of $616,860.15 into a bank account in the name of Forbes Custom Homes.

8.       The Defendant owned and operated the debtor entity Forbes Enterprises Corp, and

he was the fiduciary of the bankruptcy estate of that debtor-in-possession until an order was

entered converting that case to chapter 7 on May 19, 2010.   The Defendant caused Forbes Custom

Homes to be formed in December 2009, he formed Forbes Custom Homes 90% in the name of his

8-9 year old son, and he did not disclose Forbes Custom Homes in the then pending chapter 11

bankruptcy cases.   The Defendant proceeded to take a client of Forbes Enterprises Corp, and

re-sign that client under Forbes Custom Homes, thereby transferring, removing and/or concealing

property of the Forbes Enterprises Corp bankruptcy estate, to the tune of $616,860.15.   The

Defendant took such actions with the intent to hinder, delay, or defraud creditors, and took such

actions after the date of the filing of bankruptcy petitions by him individually, and by him on

account of Forbes Enterprises Corp.   The Debtors' conduct cries out for a denial of discharge.

## BACKGROUND

*The Adversary Proceeding:*

9.       On January 10, 2012, Roberta A. DeAngelis, the United States Trustee (the

"Plaintiff" or "UST"), by and through her counsel, filed the Complaint Objecting to Discharge (the

"Complaint") (Adv. Pro. Docket Entry 1).

10.      The Complaint is an adversary proceeding brought under 11 U.S.C. § 727(c) and

Federal Rule of Bankruptcy Procedure 7001(4).

11.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

12.      This is a core proceeding over which this Court has jurisdiction pursuant to 28

U.S.C. § 157(b)(2)(A) and (J).

13.      Venue is proper pursuant to 28 U.S.C. § 1409.

4

14.     The UST has standing to bring the Complaint under 11 U.S.C. § 307 and 28 U.S.C. § 586(a)(3).

15.     The Complaint was timely filed as the original deadline for filing a complaint objecting to discharge was extended by order of this Court pursuant to Federal Rule of Bankruptcy Procedure 4004(b) to January 10, 2012[2].

16.     On April 4, 2012, Scott Forbes (the "Defendant") filed his Answer to Complaint Objecting to Discharge (the "Answer") (Adv. Pro. Docket Entry 8).

***The Bankruptcy Filings:***

17.     On July 3, 2009, the Defendant and his spouse, Ginette Forbes, filed the instant joint voluntary bankruptcy petition (case number 09-27371(NLW), referred to herein as the "Individual Case") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), with accompanying Schedules, Statement of Financial Affairs, and other required documents.   See, Trial Exhibits-UST 8 and 9.

18.     On July 6, 2009, a voluntary bankruptcy petition was filed for Forbes Enterprises Corp. ("Forbes Enterprises Corp" or "FEC")(case number 09-27482(NLW), referred to herein as the "FEC Case") for relief under chapter 11 of the Bankruptcy Code.   See, Trial Exhibits-UST 14 and 15.

***Defendant Owned, Operated, and was the Primary Fiduciary of FEC:***

19.     The Defendant was the 100% owner, sole officer, and sole operator of FEC.   The Defendant signed FEC's bankruptcy petition as being its "President," and FEC's Statement of Financial Affairs identified the Defendant as holding the position of "President" of FEC.   Id.

---

[2] Foregoing paragraphs numbered 10-15 have been admitted by the Defendant.   See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A), Complaint ¶¶ 1-6 at page 3.

20.     FEC's bankruptcy case was filed as a voluntary chapter 11 petition.   FEC was an operating entity, and it was the source of the Defendant's income.   FEC was a construction company generally in the business of building, repairing, improving, and working on houses. Pursuant to Question 1 of FEC's Statement of Financial Affairs, FEC had $6,000,000 of Gross Income from Operation of Business from January 2008 through June 2009.   See, Trial Exhibit UST-15, bates no. 024.

21.     When the FEC case filed, and continuing until the Court entered an order converting the case to chapter 7, the Defendant was at the helm, and he was in possession and complete control of FEC; there were no other shareholders or officers of FEC.   See, Trial Exhibit UST-15, bates no. 018.   There was never any creditors' committee appointed during the chapter 11 pendency of the FEC Case.   There was never any chapter 11 trustee appointed during the chapter 11 pendency of the FEC Case.   The FEC Case proceeded as a chapter 11 debtor-in-possession up until the time the Court entered an order converting the case; the Defendant was the primary fiduciary at the center of the FEC bankruptcy estate up until the time that case converted to chapter 7 pursuant to a Court order entered on May 19, 2010.

***Formation of Forbes Custom Homes LLC ("New-Co") And its Ownership:***

22.     On or about December 1, 2009, a Certificate of Formation was filed with the New Jersey Department of Treasury, Division of Revenue forming a new corporate entity under the name "Forbes Custom Homes LLC" (referred to herein as "Forbes Custom Homes" or "New-Co").   See, Trial Exhibit UST-1.

23.     The Certificate of Formation of New-Co identifies two "Members/Managers," those being (i) the Defendant and (ii) the Defendant's son, who was at that time approximately 8-9 years old (referred to herein as "Minor-Son").   See, Id.   On or about December 4, 2009, New-Co

6

was issued an Employer Identification Number by the Department of the Treasury, Internal

Revenue Service.   See, Trial Exhibit UST-2.

24.     The facts are clear and undisputed that, during the chapter 11 pendency of the

Individual Case and the FEC Case, and before any motion was filed to convert or dismiss either

case, the Defendant formed New-Co, and set-up New-Co on paper to be 90% in the name of his

8-9 year old son[3].

**_Defendant's Intention to Operate New-Co:_**

25.     As stated above, at the time of its formation, the ownership of New-Co was 90% in

the name of the Defendant's Minor-Son, and 10% in the name of the Defendant.   This ownership

structure was merely on paper; other than having his name annexed to 90% ownership of New-Co,

the Defendant's Minor-Son had no role in the operation of New-Co[4].   New-Co was formed for the

purpose of it being an operating entity, an entity that the Defendant would operate, not his 8-9 year

old son.

26.     The Defendant did in fact operate New-Co.   New-Co started operations in the

January-March 2010 time frame, and operated for some time thereafter[5].   Moreover, as further

detailed below, the Defendant re-signed Michael Jarmark, a client of debtor FEC, under New-Co,

and all Jarmark-revenues were deposited in a bank account under New-Co's name.   Based on the

facts and circumstances, it can only be concluded that the Defendant formed New-Co with the

---

[3]   See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A),
Admission No. 3 at page 19.

[4]   See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A),
Complaint ¶ 152 at page 18.

[5]   See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A),
Admission No. 9 at page 21.

intention to operate New-Co as a replacement business for that of FEC.

***UST Files First Motion to Convert FEC Case:***

27.     On December 4, 2009, the UST filed the ***first*** of two motions filed by the UST

under section 1112(b) of the Bankruptcy Code in the FEC Case (the "First FEC 1112

Motion")(docket entry 66 of the FEC Case).   Note that the First FEC 1112 Motion was filed on

December 4, 2009, three (3) days ***after*** the December 1, 2009 filing of the Certificate of Formation

that caused New-Co to be formed under the laws of the State of New Jersey.

28.     A review of the docket in the FEC Case indicates that no pleading was filed by any

party seeking to convert or dismiss that bankruptcy case prior to December 1, 2009.   Hence, the

Defendant caused New-Co to be formed during the chapter 11 pendency of the FEC Case, and

prior to any averment by any party that the FEC Case should be converted or dismissed.

Moreover, as we further outline below, the First FEC 1112 Motion was opposed by the FEC

debtor.

***UST Files Motion to Dismiss Individual Case:***

29.     On December 28, 2009, the UST filed a Motion under section 1112(b) of the

Bankruptcy Code to dismiss the Individual Case (the "Individual 1112 Motion")(docket entry 106

of the Individual Case).   Note that the Individual 1112 Motion was filed on December 28, 2009,

almost four (4) weeks ***after*** the December 1, 2009 filing of the Certificate of Formation that caused

New-Co to be formed under the laws of the State of New Jersey.

30.     A review of the docket in the Individual Case indicates that no pleading was filed

by any party seeking to convert or dismiss that bankruptcy case prior to December 28, 2009.

Hence, the Defendant caused New-Co to be formed during the chapter 11 pendency of the

Individual Case, and prior to any averment by any party that the Individual Case should be

converted or dismissed[6].   Moreover, as we further outline below, the Individual 1112 Motion was

opposed by the Debtors, and the Debtors filed a chapter 11 Plan of Reorganization concomitant

with their efforts to defeat the Individual 1112 Motion.

***Proposed Sale of 5 Oak Road Property in the FEC Case:***

31.    On January 25, 2010, then counsel to FEC filed a motion seeking entry of an order

authorizing the sale of certain real property (the "Sale Motion")(docket entry 81 of the FEC Case).

32.    The Sale Motion sought authorization to sell one piece of real property.   The one

piece of real property that was the subject of the Sale Motion was 5 Oak Road, Saddle River,

Bergen County, New Jersey ("5 Oak Road").

33.    Pursuant to the Sale Motion, the proposed purchaser of 5 Oak Road was Michael

Jarmark ("Jarmark").

***February 8, 2010 Hearing on Sale Motion and First FEC 1112 Motion:***

34.    A hearing was held by this Court on February 8, 2010 (the "Feb. 8, 2010 Hearing").

35.    At the Feb. 8, 2010 Hearing, the Court considered and ruled on both the Sale

Motion and the First FEC 1112 Motion.   A transcript of the Feb. 8, 2010 Hearing is available at

docket entry 131 of the FEC Case.   See, Trial Exhibit UST-3.

36.    At the Feb. 8, 2010 Hearing, the Defendant testified that the cost to complete the

house at 5 Oak Road was about $160,000 to $175,000 at cost.   See, Trial Exhibit UST-3 at

17:17-22.   The Defendant further testified that he quoted a price of $200,000 to Jarmark for the

Defendant to have the work done, and for him to supervise such work, to finish the house at 5 Oak

Road.   See, Trial Exhibit UST-3 at 17:23-25, 18:1.

---

[6] See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A),
Complaint ¶ 126 at page 16.

37.     At the Feb. 8, 2010 Hearing, the Defendant testified that he anticipated a profit of approximately $25,000 in connection with the proposal to finish the house at 5 Oak Road for Jarmark.   See, Trial Exhibit UST-3 at 17:20 through 18:8.   The Defendant further testified that the contract proposal made to Jarmark to finish the house at 5 Oak Road was prepared in the name of FEC.   See, Trial Exhibit UST-3 at 17:20 through 18:8, and 22:5-12**.**

***Results of the Feb. 8, 2010 Hearing; Sale Motion Approved, First FEC 1112 Motion Denied:***

38.     At the Feb. 8, 2010 Hearing, the Court approved the Sale Motion, ruling, in part, as follows:

> I think there is a sound business purpose, a satisfied claim of the secured creditor because [secured creditor] has, I think, made a good business judgment, that this is the best value that will be realized for this property.   It lifts a financial burden off of this debtor, creates the prospect that there will be a subsequent contract to complete the construction, which if at the value testified to by [Defendant], would yield a profit for [FEC].

See, Trial Exhibit UST-3 at 38:8-15.   In approving the Sale Motion at the Feb. 8, 2010 Hearing, the Court relied, in part, on the prospect for the FEC estate to make a profit by doing work for Jarmark on the house located at 5 Oak Road.

39.     Opposition to the First FEC 1112 Motion was previously filed by FEC.   See, Trial Exhibit UST-17.   At the Feb. 8, 2010 Hearing, counsel to FEC opposed the First FEC 1112 Motion.   See, Trial Exhibit UST-3 at 49:21 through 50:12.   The Court denied the First FEC 1112 Motion without prejudice.

40.     The Defendant attended and testified at the Feb. 8, 2010 Hearing.   The Defendant knew of the continued pendency of the FEC Case as a chapter 11 debtor-in-possession proceeding following the conclusion of the Feb. 8, 2010 Hearing.

*Defendant Concealed Creation of New-Co and New-Co's Ownership Structure:*

41.     The Defendant did not disclose the formation or existence of New-Co at the Feb. 8, 2010 Hearing[7].   At no time during the pendency of the FEC Case chapter 11 proceeding did the Defendant disclose to the Court in any pleading the formation or existence of New-Co[8].   At no time during the pendency of the Individual Case chapter 11 proceeding did the Defendant disclose to the Court in any pleading the formation or existence of New-Co[9].

42.     On February 1, 2010, the Debtors filed an opposition to the then pending Individual 1112 Motion ("Defendant's Opposition to 1112") (docket entry 121 of the Individual Case).   See, Trial Exhibit UST-10.   The Defendant's Opposition to 1112 called for an opportunity for the Debtors to file a chapter 11 plan that will provide for a distribution to general unsecured creditors. See, Id.

43.     Thereafter, on February 11, 2010, the Debtors filed their Plan of Reorganization which was dated that same date (referred to herein as the "Defendant's Plan" or "Plan of Reorganization") (docket entry 129 of the Individual Case).   See, Trial Exhibit UST-12.   On that same date, along with the Defendant's Plan, an accompanying Disclosure Statement was also filed (referred to herein as the "Defendant's Disclosure Statement" or "Disclosure Statement") (docket entry 128 of the Individual Case).   See, Trial Exhibit UST-11.

44.     The Defendant's Plan was proposed in chapter 11.   The Defendant's Disclosure

---

[7]  See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A), Complaint ¶ 49 at page 8.

[8]  See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A), Complaint ¶ 50 at page 8.

[9]  See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A), Complaint ¶ 52 at page 8.

Statement describes the Defendant's Plan as a reorganization plan, whereby funding was to come from disposable income of the [Debtors].   See, Trial Exhibit UST-11, page 26.   Despite the Defendant's creation of New-Co, and the Defendant's operation of New-Co, neither the Defendant's Plan nor the Defendant's Disclosure Statement make any mention of New-Co.   See, Trial Exhibit UST-11 and 12.   Moreover, there is no disclosure of New-Co in the Defendant's monthly operating report for the period of December 2012 filed in the Individual Case.   See, Trial Exhibit UST-13, bates nos. 083-099.

***Conversion of Defendant's Individual Chapter 11 Case to Chapter 7:***

45.    On or about February 16, 2010, a hearing was held by this Court to consider the Individual 1112 Motion.

46.    On February 17, 2010, upon considering the Individual 1112 Motion, the Court entered an order converting the Individual Case to a chapter 7 proceeding.   See, docket entry 137 of the Individual Case.

47.    Note that as of the February 17, 2010 conversion of the Individual Case to chapter 7, the FEC Case was continuing as an operating debtor-in-possession chapter 11 case with the Defendant at the helm of that bankruptcy estate.

***Defendant Proceeded to Operate New-Co:***

48.    The Defendant proceeded to operate New-Co and generate revenue.   On or about February 27, 2010, a bank account was established in the name of New-Co at JPMorgan Chase Bank, N.A., with an account number ending in X3036 (the "New-Co Bank Account").   See, Trial Exhibit UST-4.   Defendant opened, or caused the opening of, the New-Co Bank Account[10].

---

[10]   See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A), Complaint ¶ 160 at page 18.

Defendant had control over the New-Co Bank Account[11].

49.     The Defendant proceeded to perform work for Jarmark at the 5 Oak Road property subsequent to the sale of that property from FEC to Jarmark[12].   As noted above, the Defendant re-signed Jarmark (previously a client of FEC) under New-Co; this occurred on March 9, 2013, as represented in the contract document between Jarmark and New-Co of that date.   See, Trial Exhibit UST-18.   The Defendant then caused revenue generated from the 5 Oak Road job to be deposited into the New-Co Bank Account[13].

50.     On March 9, 2010, a deposit made via wire transfer was credited into the New-Co Bank Account from Jarmark with the description "Completion of 5 Oak Rd." in the amount of $100,000.   See, Trial Exhibit UST-4, at bates no. 011.

51.     On March 9, 2010, a deposit made via wire transfer was credited into the New-Co Bank Account from Jarmark with the description "Basement Contract" in the amount of $65,000.   See, Id., at bates no. 005.

52.     On March 16, 2010, a deposit made via wire transfer was credited into the New-Co Bank Account from Jarmark with the description "Completion of 5 Oak Rd." in the amount of $50,000.   See, Id., at bates no. 011.

53.     On March 16, 2010, a deposit made via wire transfer was credited into the New-Co Bank Account from Jarmark with the description "Basement Contract" in the amount of $50,000.

---

[11] See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A), Complaint ¶ 161 at page 18.

[12] See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A), Admission No. 5 at page 20.

[13] See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A), Admission No. 7 at page 20.

13

See, Id., at bates no. 005.

54.    On March 25, 2010, a deposit made via wire transfer was credited into the New-Co Bank Account from Jarmark with the description "Completion of 5 Oak Rd." in the amount of $15,860.15.  See, Id., at bates no. 011.

55.    On March 25, 2010, a deposit made via wire transfer was credited into the New-Co Bank Account from Jarmark with the description "Basement Contract" in the amount of $75,000. See, Id., at bates no. 005.

56.    On April 1, 2010, a deposit made via wire transfer was credited into the New-Co Bank Account from Jarmark with the description "Completion of 5 Oak Road" in the amount of $15,000.  See, Id., at bates no. 020.

57.    On April 1, 2010, a deposit made via wire transfer was credited into the New-Co Bank Account from Jarmark with the description "Copper Gutters" in the amount of $13,400. See, Id., at bates no. 037.

58.    On April 12, 2010, a deposit made via wire transfer was credited into the New-Co Bank Account from Jarmark with the description "Completion of 5 Oak Road" in the amount of $25,000.  See, Id., at bates no. 020.

59.    On April 12, 2010, a deposit made via wire transfer was credited into the New-Co Bank Account from Jarmark with the description "Basement Contract" in the amount of $50,000[14]. See, Id., at bates no. 037.

---

[14] Foregoing paragraphs numbered 50-59 have been admitted by the Defendant.   See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A), Complaint ¶¶ 65-74 at pages 9-10.

***UST Files Second Motion to Convert FEC Case:***

60.    On April 23, 2010, the UST filed the second of two motions filed by the UST under section 1112(b) of the Bankruptcy Code in the FEC Case (the "Second FEC 1112 Motion")(docket entry 125 of the FEC Case).

***Defendant Continued to Operate New-Co:***

61.    On April 26, 2010, a deposit made via wire transfer was credited into the New-Co Bank Account from Jarmark with the description "Completion of 5 Oak Road" in the amount of $10,100.   See, Trial Exhibit UST-4, at bates no. 020.

62.    On April 26, 2010, a deposit made via wire transfer was credited into the New-Co Bank Account from Jarmark with the description "Coah Fee For 5 Oak Rd" in the amount of $22,500.   See, Id., at bates no. 037.

63.    On May 5, 2010, a deposit made via wire transfer was credited into the New-Co Bank Account from Jarmark with the description "Completion of 5 Oak Road" in the amount of $25,000.   See, Id., at bates no. 044.

64.    On May 12, 2010 a deposit made via wire transfer was credited into the New-Co Bank Account from Jarmark with the description "Completion of 5 Oak Road" in the amount of $50,000.   See, Id., at bates no. 044.

65.    On May 12, 2010, a deposit made via wire transfer was credited into the New-Co Bank Account from Jarmark with the description "Basement Contract" in the amount of $50,000[15].   See, Id., at bates no. 055.

---

[15] Foregoing paragraphs numbered 61-65 have been admitted by the Defendant.   See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A), Complaint ¶¶ 76-80 at pages 10-11.

***Conversion of FEC Chapter 11 Case to Chapter 7 Proceeding:***

66.     On May 19, 2010, the Court entered an order converting the FEC Case from a chapter 11 proceeding to a chapter 7 proceeding.   See, docket entry 125 of the FEC Corp Case.

***Defendant Continued to Operate New-Co:***

67.     On June 4, 2010, a deposit made via wire transfer was credited into the New-Co Bank Account from Jarmark with the description "Completion of 5 Oak Road" in the amount of $6,088.   See, Trial Exhibit UST-4, at bates no. 066.

68.     On June 30, 2010, a deposit made via wire transfer was credited into the New-Co Bank Account from Jarmark with the description "Per Basement Contract" in the amount of $30,000.   See, Id., at bates no. 081.

69.     On July 22, 2010, a deposit made via wire transfer was credited into the New-Co Bank Account from Jarmark with the description "Completion of 5 Oak Road" in the amount of $24,900[16].   See, Id., at bates no. 088.

***Defendant Did Not Operate FEC Subsequent to the Feb. 8, 2010 Hearing:***

70.     On or about April 22, 2010, the Defendant signed a Monthly Operating Report for the period February 2010 for the FEC debtor (the "Feb 2010 FEC MOR").   See, Trial Exhibit UST-16B, at bates nos. 138-149.   On April 28, 2010, the Feb 2010 FEC MOR was filed in the FEC Case.   See, docket entry 128 of the FEC Case.

71.     The Feb 2010 FEC MOR does not show continued operations of the FEC debtor. The Feb 2010 FEC MOR does not show any deposits from Jarmark.   The Feb 2010 FEC MOR does not show any transactions between the FEC debtor and Jarmark.   See, Trial Exhibit

---

[16]   Foregoing paragraphs numbered 67-69 have been admitted by the Defendant.   See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A), Complaint ¶¶ 82-84 at page 11.

UST-16B, at bates nos. 138-149.

72.      On or about April 22, 2010, the Defendant signed a Monthly Operating Report for the period March 2010 for the FEC debtor (the "March 2010 FEC MOR").   See, Trial Exhibit UST-16B, at bates nos. 150-164.   On April 28, 2010, the March 2010 FEC MOR was filed in the FEC Case.   See, docket entry 129 of the FEC Case.

73.      The March 2010 FEC MOR does not show continued operations of the FEC debtor. The March 2010 FEC MOR does not show any deposits from Jarmark, other than certain *sale proceeds* being put in escrow in connection with the sale of the 5 Oak Road property as contemplated in the Sale Motion.   The March 2010 FEC MOR does not show any transactions between the FEC debtor and Jarmark, other than certain *sale proceeds* being put in escrow in connection with the *sale* of the 5 Oak Road property as contemplated in the Sale Motion.   See, Trial Exhibit UST-16B, at bates nos. 150-164.

74.      Subsequent to the Feb. 8, 2010 Hearing, the Defendant did not conduct operations in the name of the FEC debtor[17].

75.      Subsequent to the Feb. 8, 2010 Hearing, the Defendant did not deposit monies from operations of business activities into any account in the name of the FEC debtor[18].

---

[17]   See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A), Complaint ¶ 95 at page 12.

[18]   See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A), Complaint ¶ 96 at page 13.

***Subsequent to the Feb. 8, 2010 Hearing, Defendant Performed Services for Jarmark, and others, in the Name of New-Co, Rather than in the Name of FEC:***

76.    Subsequent to the Feb. 8, 2010 Hearing, the Defendant did perform services for Jarmark[19].   As detailed above, subsequent to the Feb. 8, 2010 Hearing, the Defendant deposited significant monies in connection with his business activities with Jarmark into the New-Co Bank Account.

77.    Other additional deposits were made into the New-Co Bank Account, not including those from Jarmark, that constituted payments for work done by the Defendant in the name of New-Co.   At a Rule 2004 examination of the Defendant conducted on June 9, 2011 (the "2004 Exam"), the Defendant testified that the first job for New-Co was a basement job, approximately in the end of February 2010[20].

78.    At the 2004 Exam, the Defendant testified that the biggest job New-Co had up to that date (June 9, 2011) was the finishing of 5 Oak Road for Jarmark[21].

79.    Despite the Defendant's sworn testimony at the Feb 8, 2010 Hearing where he represented to the Court that future Jarmark work would be done in the name of the FEC debtor, the Defendant proceeded to perform such work in the name of New-Co, and the Defendant deposited monies attendant to such Jarmark work into the New-Co Bank Account.

---

[19]    See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A), Admission No. 5 at page 20.

[20]    See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A), Complaint ¶ 100 at page 13.

[21]    See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A), Complaint ¶ 101 at page 13.

18

***Review of Funds Received from Jarmark and Deposited Into New-Co Bank Account:***

80.     Pursuant to the bank statements provided to date covering the time period from February 27, 2010 through July 30, 2010, the total amount of funds received from Jarmark and deposited into the New-Co Bank Account attributable to "Completion of 5 Oak Road" was $321,948.15.

81.     Pursuant to the bank statements provided to date covering the time period from February 27, 2010 through July 30, 2010, the total amount of funds received from Jarmark and deposited into the New-Co Bank Account attributable to "Basement Contract" was $320,000.

82.     Pursuant to the bank statements provided to date covering the time period from February 27, 2010 through July 30, 2010, the total amount of funds received from Jarmark and deposited into the New-Co Bank Account attributable to "Copper Gutters" and "Coah Fee For 5 Oak Rd" was $35,900.

83.     As a result, pursuant to the bank statements provided to date covering the time period from February 27, 2010 through July 30, 2010, the total amount of funds received from Jarmark and deposited into the New-Co Bank Account for ***all work*** done at 5 Oak Road, was, ***in the aggregate***, $677,848.15.

84.     For the specific time period between the Feb. 8, 2010 Hearing and the conversion of the FEC Case to chapter 7 on May 19, 2010, the total amount of funds received from Jarmark and deposited into the New-Co Bank Account for ***all work*** done at 5 Oak Road, was, ***in the aggregate***, $616,860.15.

85.     As detailed above, the vast majority of funds paid by Jarmark and deposited into the New-Co Bank Account for work done at 5 Oak Road were received prior to the FEC Case

converting to chapter 7 on May 19, 2010[22].

***Jarmark Was a Client of FEC:***

86.     The Defendant initially contracted with Jarmark in the name of FEC[23].   As further

detailed below, a number of documents were prepared in connection with the 5 Oak Road job for

Jarmark in the name of FEC.   See, Trial Exhibit UST-5.

87.     On or about December 15, 2009, a document titled "RE: 5 Oak Road Finish" was

prepared for Jarmark in the name of FEC.   See, Id., at bates no. 001.

88.     On or about February 11, 2010, a document titled "RE: 5 Oak Road Basement

Specs" was prepared for Jarmark in the name of FEC.   See, Id., at bates no. 004.

89.     On or about February 11, 2010, a document titled "RE: Wall Unit and Master

Closet" was prepared for Jarmark in the name of FEC.   See, Id., at bates no. 010.

90.     On or about February 11, 2010, a document titled "RE: Fireplace" was prepared for

Jarmark in the name of FEC.   See, Id., at bates no. 013.

91.     On or about February 11, 2010, a document titled "Boiler Upgrade" was prepared

for Jarmark in the name of FEC.   See, Id., at bates no. 014.

92.     Additionally, a certain Home Buyers Warranty, executed on account of FEC on

March 12, 2010, with an effective date of March 15, 2010, and counter-executed by Jarmark on

March 16, 2010, was provided to Jarmark in the name of FEC.   See, Trial Exhibit UST-6.   It is

---

[22] Foregoing paragraphs numbered 80-85 have been admitted by the Defendant.   See,
Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A), Complaint ¶¶
103-108 at page 13-14.

[23] See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A),
Complaint ¶ 109 at page 14, and ¶ 143 at page 17.

clear, from the facts and circumstances, that Jarmark was a client of FEC[24].

***Defendant Proceeded to Contract with Jarmark in the name of New-Co, Rather than Through FEC, During the Pendency of FEC's Chapter 11 Proceeding:***

93.     During the pendency of FEC's chapter 11 proceeding, the Defendant proceeded to contract with Jarmark in the name of New-Co, rather than through FEC[25].

94.     As detailed above, on March 9, 2010, the Defendant created a document titled "Construction Contract" whereby the Defendant crossed-out FEC, and penned-in New-Co.   See, Trial Exhibit UST-18.   As further detailed below, a number of documents were prepared in connection with the 5 Oak Road job for Jarmark in the name of New-Co.   See, Trial Exhibit UST-7.

95.     On or about March 16, 2010, a document titled "RE: Humidifiers" was prepared for Jarmark in the name of New-Co.   See, Id., at bates no. 001.

96.     On or about March 16, 2010, a document titled "RE: Whole house Fresh Air System" was prepared for Jarmark in the name of New-Co.   See, Id., at bates no. 002.

97.     On or about March 22, 2010, a document titled "RE: Invoices due" was prepared for Jarmark in the name of New-Co.   See, Id., at bates no. 003.

98.     On or about April 5, 2010, a document titled "RE: Fence" was prepared for Jarmark in the name of New-Co.   See, Id., at bates no. 004.

99.     On or about May 5, 2010, a document titled "RE: Final Work" was prepared for Jarmark in the name of New-Co.   See, Id., at bates no. 005.

---

[24] See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A), Complaint ¶ 146 at page 17.

[25] See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A), Complaint ¶ 116 at page 15.

100.    New-Co was represented as having the same contact information as FEC[26].

*Status of Pre-Trial Discovery:*

101.    On March 6, 2013, this Court entered the Amended Joint Order Scheduling Pretrial Proceedings and Preemptory Trial Date (Adv. Pro. Docket Entry 21).

102.    On April 26, 2013, the Plaintiff served the Plaintiff's Initial Disclosures on the Defendant, through counsel; the Plaintiff's Initial Disclosures were amended via letter dated April 30, 2013.   To date, the Defendant has not provided initial disclosures to the Plaintiff; the Plaintiff reserves all rights.

103.    On April 29, 2013[27], the Plaintiff served (i) the Plaintiff's Request for Admissions, and (ii) the Plaintiff's Interrogatories on the Defendant, through counsel.   On June 3, 2013[28], the Defendant served the Defendant's Responses and Objections to Request for Admissions on the Plaintiff, through counsel.   To date, the Defendant has not provided any answer or response to the Plaintiff's Interrogatories; the Plaintiff reserves all rights.

104.    On May 22, 2013, the Plaintiff served Plaintiff's First Set of Document Requests, on the Defendant, through counsel.   The Plaintiff's First Set of Document Requests sought pre-trial document production by June 21, 2013.   To date, the Defendant has not provided any response to the Plaintiff's First Set of Document Requests; the Plaintiff reserves all rights.

---

[26]   See, Plaintiff's Statement of Admitted (Undisputed) Facts, (attached hereto as Exhibit A), Complaint ¶ 122 at page 15.   Additionally, a quick visual comparison of the documents that comprise Trial Exhibits UST-5 and UST-7 illustrates that FEC and New-Co presented the same contact information on their respective letter-head.

[27]   Service of these pretrial discovery matters on this date was timely, as per mutual agreement of the parties.

[28]   Service of this pretrial discovery matter on this date was timely, as per mutual agreement of the parties.

105.    On June 25, 2013, the Plaintiff served a Subpoena in an Adversary Proceeding on Defendant, through counsel; this subpoena compels the Defendant's appearance and testimony in Court at the July 17, 2013, 10:00 a.m., trial date.

## ARGUMENT

### *Bankruptcy Code Subsection 11 U.S.C. §727(a)(2)(B):*

106.    The First Count of the Plaintiff's Complaint asserts a claim under 11 U.S.C. 727(a)(2)(B) of the Bankruptcy Code.   Subsection 727(a)(2)(B) provides as follows:

> The debtor, with intent to hinder, delay, or defraud a creditor or an office of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilate, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
>
> (A) … ; or
>
> (B) property of the estate, after the date of the filing of the petition.

107.    To prevail on an action under § 727(a)(2)(B), a party must prove, by a preponderance of evidence, (1) a disposition of property, such as a transfer or concealment; (2) a subjective intent on the debtor's part to hinder, delay, or defraud one or more creditors or the bankruptcy trustee through that disposition; and (3) that both the disposition and improper intent occurred after the date of the filing of the petition.   See, In re Last, 440 B.R. 642, 649 (Bankr D.N.J. 2010) (citing Rosen v. Bezner, 996 F.2d 1527, 1531 (3rd Cir. 1986)).   See also, In re Corona, 2010 WL 1382122 at *13 (Bankr. D.N.J. 2010).   See also, In re Kleinman, 2011 WL 5528250 at *3 (Bankr. D.N.J. 2011 ("The elements of a § 727(a)(2)(B) claim differ from § 727(a)(2)(A) only to the extent that the postpetition period is the relevant time period, the need to demonstrate the subjective intent to transfer or conceal property of the estate remains the same.").

108.    At its essence, two things must be shown to prevail under § 727(a)(2)(B), those two

things being (i) an act (a transfer or concealment) and (ii) an improper intent (a subjective intent to

hinder, delay or defraud a creditor).   See, Rosen v. Bezner, 996 F.2d 1527, 1531 (3rd Cir. 1986).

See also, In re Finney, 333 B.R. 242, 247 (Bankr W.D.Pa. 2005).

***The Defendant Transferred and Concealed Property after the filing of the Petitions in the
Individual Case and the FEC Case:***

109.    No transfer can be more clear than the Construction Contract dated March 9, 2010,

wherein Defendant crossed-out FEC and penned-in New-Co in the paragraphs of the document,

and in the signature block.   See, Trial Exhibit UST-18.

110.    The Defendant has admitted that Jarmark initially contracted with FEC, and that

Jarmark was a client of FEC.   The Defendant has admitted that (despite his testimony to the Court

at the Feb. 8, 2010 Hearing) he did not conduct operations in the name of FEC subsequent to the

Feb. 8, 2010 Hearing.   The Defendant has admitted that, in between the Feb. 8, 2010 Hearing and

the entry of an order converting the FEC case to chapter 7 on May 19, 2010, the total amount of

funds received from Jarmark in the amount of $616,860.15 was deposited into a bank account in

the name of New-Co, not FEC.

111.    Jarmark was a client of FEC.   The Jarmark work was corporate opportunity of

FEC, an opportunity that yielded total revenues from February 27, 2010 through July 30, 2010 in

the amount of $677,848.15.   Jarmark as a client, Jarmark as a contracting party, Jarmark as a

corporate opportunity, the revenue generated by work done for Jarmark (collectively the

"Jarmark-Assets") was all was simply transferred by the Defendant from the FEC bankruptcy

estate to New-Co.   Again, the Defendant's admissions, the opposition to converting the FEC

Case, the maintenance of the FEC case in chapter 11, the Defendant's testimony at the Feb. 8, 2010

hearing, the flow of monies from Jarmark to New-Co, are all clear facts of this case, as well as the

visual by the March 9, 2010 construction contract with Jarmark (<u>Trial Exhibit UST-18</u>).

112.   The Defendant owned, operated, and controlled FEC.   During the duration of the FEC case as a chapter 11 debtor-in-possession, the Defendant was at the helm, the Defendant was the central fiduciary of the bankruptcy estate in that case.   Despite his effort to shield New-Co by forming it 90% in the name of his 8-9 year old son, the Defendant similarly operated and controlled New-Co.   The transfer of Jarmark-Assets (as outlined above) from the FEC bankruptcy estate to New-Co was done by the Defendant, who transferred such property from one entity that he fully controlled (FEC) to another (New-Co).

113.   The Defendant's transfer of the Jarmark-Assets from the FEC bankruptcy estate to New-Co is directly relevant to both the Individual Case and the FEC Case.   With respect to the FEC Case, a client, a corporate opportunity, and attendant revenue were taken from that bankruptcy estate by the Defendant and transferred to New-Co, thereby taking that property out of that bankruptcy estate.   With respect to the Individual Case, the 100% stock interest in FEC was listed as an asset in that case, and taking such property out of the FEC Case thus has a direct carry-over with respect to the assets listed in the Individual Case.   The Defendant's actions directly effect a transfer of property out of the bankruptcy estates of both the FEC Case and the Individual Case.

114.   Although § 727(a)(2)(B), being written in the disjunctive, looks to *either* a ***transfer or* a *concealment*** of property, it is respectfully asserted that the Defendant ***both transferred*** (as argued above) and ***concealed*** property.

115.   The Defendant has admitted that he did not disclose the formation of New-Co at the Feb. 8, 2010 Hearing, in any pleading filed in the Individual Case, or in any pleading filed in the FEC Case.   Moreover, despite New-Co being formed on December 1, 2009, and the Defendant

25

having an ownership interest in New-Co, there is no mention of New-Co in the Defendant's Plan

or in the Defendant's Disclosure Statement filed in the Individual Case.   The Debtor simply kept

the formation and operation of New-co a secret.

116.    "'Concealment' is defined as preventing the discovery of, fraudulently transferring,

or withholding knowledge or information required by law to be made known."   In re Corona,

2010 WL 1382122 at *13 (Bankr. D.N.J. 2010) (citing In re Henderson, 134 B.R. 147,157 (Bankr.

E.D.Pa. 1991), citing United States v. Schireson, 116 F.2d 881, 884 (3d Cir. 1940)).   The

Defendant clearly withheld knowledge of New-Co from this Court and creditors.   At the Feb. 8,

2010 Hearing, through sworn testimony, the Defendant represented to the Court an expectation

that the work to be done on the house at 5 Oak Road for Jarmark was going to be done in the name

of FEC; to the contrary, more than two months prior he had formed New-Co, and thereafter he

proceeded to deposit $616,860.15 of Jarmark-revenue into a bank account in the name of New-Co

rather than a bank account in the name of FEC, all prior to the conversion of FEC to chapter 7.

117.    "What is critical under the concealment provision of § 727(a) is whether there is a

concealment of property, not whether there is concealment of a transfer."   Id. (citing Rosen v.

Bezner, 996 F.2d at 1532).   "Thus, to prove concealment, a showing that the debtor retained an

interest in the transferred property is required."   Id.   The Defendant did in fact retain not only an

interest in, but complete control of, that which he concealed.   Although the Defendant formed

New-Co 90% in his son's name, he kept a 10% interest in his name.   And despite the Defendant's

efforts to shield New-Co behind his son's name, his son was 8-9 years old at the time, and as the

Defendant has admitted his son did not have any role in the operations of New-Co.   The

Defendant has further admitted that he controlled the New-Co Bank Account.   Not only did the

Defendant maintain a 10% ownership interest (on paper) in that which he concealed, he

26

maintained 100% control (in reality) of that which he concealed.

***The Defendants Actions were with an Improper Intent:***

118.    Under the provision precluding the grant of a discharge, if the debtor transferred

property with intent to hinder, delay, or defraud, intent to hinder or delay is sufficient for the court

to sustain objections to discharge; since the language of the statute is disjunctive, there is no

requirement for intent to be fraudulent.   11 U.S.C. §727(a)(2); McCormick v. Security State

Bank, 822 F.2d 806 (8th Cir. 1987); In re Tarle, 87 B.R. 376 (Bankr. W.D. Pa. 1988).

119.    Discharge may be denied if the debtor makes the transfer with the intent to hinder,

delay, or defraud a creditor; there is no requirement that the debtor intend to hinder all of his

creditors.   In re Adeeb, 787 F.2d 1339 (9th Cir. 1986).   A court's inquiry under the statute is

whether the debtor intended to hinder or delay a creditor; a debtor with such intent has the intent

penalized by the statute, notwithstanding any other motivation the debtor may have had for the

transfer.   In re Adeeb, 787 F.2d 1339 (9th Cir. 1986).   Whether the debtor had the necessary

wrongful intent to sustain denial of a discharge under 11 U.S.C. §727(a)(2) is a question of fact.

In re Miller, 97 B.R. 760 (Bankr. W.D.N.Y. 1989).

120.    The intent aspect of a claim under § 727(a)(2) requires that the intent must be an

actual intent and cannot be constructive.   In re Last, 440 B.R. at 649.   However, "[a]n

individual's intent does not exist in a vacuum; in the context of § 727(a), the relevant intent is the

motivation accompanying certain physical action."   Rosen v. Bezner, 996 F.2d at 1533.   "As it is

unlikely that any debtor will admit a fraudulent intent, the focus must be on the surrounding

'circumstantial evidence or on infernces drawn from a course of conduct."   In re Finney, 333 B.R.

at 247 (citing In re Dolata, 306 B.R. 97, 146 (Bankr. W.D.Pa. 2004).   "The actual intent may be

established by circumstantial evidence or inferred from the debtor's conduct."   In re Last, 440

27

B.R. at 649.    Additionally, a number of courts have developed "badges of fraud" which indicate

fraudulent intent.    Because fraudulent intent is rarely susceptible to direct proof, courts have

developed "badges of fraud" to establish actual intent to defraud.    Such "badges of fraud" include:

(1) the lack or inadequacy of consideration; (2) a familiar, friendship, or close associate

relationship between the parties; (3) retention of possession, benefit, or use of the property in

question; (4) financial condition of the party sought to be charged both before and after the

transaction in question; (5) existence or cumulative effect of the pattern or series of transactions or

course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of

suits by creditors; and (6) the general chronology of events and transactions under inquiry.    In re

Kaiser, 722 F.2d 1574, 1582-3 (2d Cir. 1983).    "An intent to hinder, delay, or defraud creditors

will further be presumed where the debtor gratuitously transfers valuable property, or transfers

property for inadequate consideration."    In re Corona, 2010 WL 1382122 at *13 (Bankr. D.N.J.

2010) (citing In re Somerville, 73 B.R. 826, 834 (Bankr.E.D.Pa. 1987).

121.    In the instant case, as outlined in great detail above, and as spelled-out in the

Plaintiff's Statement of Admitted (Undisputed) Facts (attached hereto as Exhibit A), the factual

chronology of events have all been admitted by the Defendant.    The Defendant's creation of

New-Co on December 1, 2009 90% in his 8-9 year old son's name, his testimony at the Feb. 8,

2010 Hearing, his failure to disclose New-Co, FEC securing Jarmark as a client, the Defendant

stopping to operate FEC after the Feb. 8, 2010 Hearing, the Defendant operating New-Co after the

Feb. 8, 2010 Hearing, and the deposit of $616,860.15 of Jarmark-revenue into a bank account in

the name of New-Co rather than a bank account in the name of FEC, all prior to the conversion of

FEC to chapter 7, has all been admitted.    It is admitted and undisputed that the Defendant was the

owner, operator, and person in control of FEC; he was the central fiduciary of that bankruptcy

28

estate.   It is admitted and undisputed that the Defendant operated New-Co, and the Defendant

controlled the New-Co Bank Account.   The timing and chronology of events have all been

admitted.

122.   The only outstanding finding to be made by this Court is intent.   There can be no

doubt that the Defendant operated with an improper actual intent.   The relationship between FEC

and New-Co was seamless, both entities being controlled by the Defendant.   It has been admitted

by the Defendant that, as of June 9, 2011 (the date of the 2004 Exam), the Jarmark work was the

biggest job New-Co had up to that date.   As of the Feb. 8, 2010 Hearing, the Jarmark work was a

corporate opportunity of the FEC bankruptcy estate, and thereafter that work was simply taken by

the Defendant and transferred to New-Co.   There was no consideration given to the FEC estate for

New-Co's receipt of Jarmark as a client.   Beyond keeping it a secret, the Defendant further tried

to hide New-Co by forming it 90% in the name of his 8-9 year old son, but this was merely a ruse,

as the Defendant was playing a shell game with the single best business opportunity at the time,

that being Jarmark as a client.   The Defendant shifted the Jarmark work to New-Co, that being an

entity wholly controlled by him and not subject to the creditors' rights of either the FEC Case or

the Individual Case so long as no one found out about it.   The Defendant was operating in a

difficult time; the monthly operating reports filed in both the Individual Case and the FEC case

show extreme financial stress in both cases.   See, Trial Exhibits UST 13, 16A, and 16B.   Jarmark

was the best business opportunity at the time, and rather than subject that property to the creditors'

rights of the pending bankruptcy cases, the Defendant decided to abscond with it.   The Debtor's

actions were planned, forming New-Co on December 1, 2009.   The Debtor kept his actions a

secret, failing to disclose New-Co along the way.   The Debtor's actions are clearly visible in the

March 9, 2101 Construction Contract with Jarmark, wherein he crossed-out FEC, and penned-in

29

New-Co.    See, Trial Exhibit UST-18.

123.    The events are clear.    The timeline is clear.    The Defendant's clandestine taking

of a client from FEC, and transferring it to New-Co, a newly formed entity that he controlled, is

clear.    Although, as outlined below, actual financial impact on a bankruptcy estate is not

necessary in order to deny a discharge under § 727(a), the amount of revenue so transferred along

with the Jarmark-work is clear, and the amount of it is shocking.    The Defendant's improper

actual intent is clear.

**_Bankruptcy Code Subsection 11 U.S.C. §727(a)(7):_**

124.    The Second Count of the Plaintiff's Complaint asserts a claim under 11 U.S.C.

727(a)(7) of the Bankruptcy Code.    Subsection 727(a)(7) provides, in pertinent part, as follows:

> The debtor has committed any act specified in [§ 727(a)(2)] . . .
> during the case, in connection with another case, under this title or
> under the Bankruptcy Act, concerning an insider.

125.    In the context of a debtor that is an individual, an "insider" includes a corporation

of which the individual debtor is a director, officer, or person in control.    11 U.S.C. §

101(31)(A)(iv).    The Defendant was the "president" of FEC.    It is admitted that the Defendant

was the 100% owner of FEC, and the Defendant was the sole operator of FEC; the Defendant was

a person in control of FEC.    FEC is an insider of the Defendant.

126.    In the context of a debtor that is a corporation, an "insider" includes a director,

officer, or person in control of such corporate debtor.    11 U.S.C. § 101(31)(B)(i)-(iii).    The

Defendant was the sole officer of FEC.    It is admitted that the Defendant was the sole operator of

FEC; the Defendant was a person in control of FEC.    The Defendant is an insider of FEC.

127.    As outlined more fully above, the acts of the Defendant that are presented in this

adversary proceeding apply to both the Individual Case and the FEC Case.    The application to the

FEC case is direct.   The Application to the Individual Case is also direct, through the stock of

FEC being an asset of the Individual Case.

128.    Additionally, the acts of the Defendant, as they directly apply to the FEC Case, in

turn cause him exposure under § 727(a)(2)(B) by operation of § 727(a)(7), in that the Defendant's

actions taken in the FEC Case were acts taken during his case, in connection with another case

under the Bankruptcy Code, concerning an insider.

129.    With that, although the Defendant's actions (as outlined above) directly apply to his

Individual Case by operation of the FEC stock being an asset of the Individual Case, the

Defendant's actions *also* cause him exposure under § 727(a)(2)(B) by operation of § 727(a)(7).

### No Defenses Asserted by Defendant / No Initial Disclosures Provided by Defendant:

130.    A review of the Defendant's Answer indicates that no defenses are identified or

otherwise asserted.   In responding to a pleading, a party must state in short and plain terms its

defenses to each claim asserted against that party.   Fed R. Civ. Pro. 8(b)(1)(A).   It can only be

concluded that the Defendant does not assert any defenses to the counts asserted in the Plaintiff's

Complaint; the Plaintiff reserves all rights.

131.    To date, the Defendant has not provided any initial disclosures to the Plaintiff.   It

can only be concluded that the Defendant is not going to present a rebuttal case at trial; the Plaintiff

reserves all rights.

### Advise of Counsel Defense Not Available to the Defendant:

132.    As outlined above, the Defendant has not asserted any affirmative defense, or any

other defense, in this adversary proceeding.   Accordingly, the Debtor must be precluded at trial

from asserting any defense, and the Plaintiff reserves all rights.

133.    However, the Defendant may attempt, at trial, to blame one or more of the attorneys

31

he has had in connection with his Individual Case and this adversary proceeding.   If he were to

attempt to do so, the Plaintiff in no way acknowledges herein the Defendant's ability to assert any

such defense at trial, and reserves all rights.

134.    If the Defendant were to try to blame his actions on one or more of his lawyers at

trial, and in the event the Court were to consider that, it is respectfully asserted that the advice of

counsel defense is not available to the Defendant in the circumstances of this adversary

proceeding.

135.    A debtor's reliance on advice of counsel must be in good faith.   In re Adeeb, 787

F.2d 1339, 1343 (9th Cir. 1986).   When a debtor knows that the purpose of a transfer and/or

concealment is to hinder or delay creditors, the debtor is precluded from the defense of good faith

reliance on the advice of counsel.   Id.   "The advice of counsel is not a defense when the

erroneous information should have been evident to the debtor."   In re Retz, 606 F.3d 1189, 1199

(9th Cir. 2010) (citing In re Tully, 818 F.2d 106, 111 (1st Cir. 1987)).   "A debtor cannot, merely by

playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for

statements which he has made under oath."   Id.   In this vein, the Court must consider the

representations made by the Defendant at the Feb. 8, 2010 Hearing.   The Defendant testified,

under oath, to this Court, that he had written up the estimate for the Jarmark construction work in

the name of FEC.   The Defendant's testimony led to the Court to rule that such event created "the

prospect that there will be a subsequent contract to complete the construction, which if at the value

testified to by [Defendant], would yield a profit for [FEC]."   See, Trial Exhibit UST-3 at 38:8-15.

The Defendant gave his testimony, in the shadow of having formed New-Co more than two

months prior.   The Defendant's testimony contributed to the Court's denial of the then pending

First FEC 1112 Motion, which led to the FEC Case continuing as a debtor-in-possession chapter

11 proceeding with the Defendant as the central fiduciary of that estate.   The Defendant's

testimony, which led to the results of the Feb. 8, 2010 Hearing, stands in stark contrast to his

actions.   The Defendant gave the Court the clear representation that he was going to perform the

Jarmark construction work in the name of FEC, and proceeded to ***not*** operate FEC, but rather

re-sign Jarmark under New-Co.   These actions, and the Defendant's gross lack of good faith,

necessarily voids any attempt by the Defendant to utilize any advice of counsel defense.

***Applicable Burden of Proof:***

136.   It is well settled that the burden of proof applicable in this adversary proceeding is

the preponderance of evidence standard.   If it is demonstrated by a preponderance of the evidence

that the debtor actually intended to hinder, delay, or defraud a creditor, the court can deny a

discharge.   In re Last, 440 B.R. at 649. (citing Vill. of San Jose v. McWilliams, 284 F.3d 785, 790

(7th Cir.2002) (citing In re Keeney, 227 F.3d 679, 683 (6th Cir.2000); In re Scott, 172 F.3d 959,

966–67 (7th Cir.1999)).

***A Discharge Cannot be Granted to the Defendant:***

137.   A discharge cannot be granted an individual chapter 7 debtor, if the debtor, with

intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of

property under the Bankruptcy Code, has transferred, removed, destroyed, mutilated, or

concealed, (1) property of the debtor, within one (1) year before the date if the filing of the petition,

or (2) property of the estate, after the date of the filing of the petition.   11 U.S.C.§727(a)(2)(A), 11

U.S.C.§727(a)(2)(B).   The purpose of this section is to deny a discharge to those debtors who,

intending to defraud, transfer property, which would have become property of the bankruptcy

estate.   In re Dennis, 330 F.3d 696 (5th Cir. 2003).

138.   The damage caused by the Defendant's actions to the Individual Case and the FEC

Case, and to the bankruptcy estates of those cases, cannot be known.   However, the amount or

presence of any such damage is irrelevant.   Whether the Defendant actually defrauded or harmed

his creditors is of no consequence to this adversary proceeding; to the contrary, a "lack of injury to

creditors is irrelevant for the purposes of denying a discharge in bankruptcy." In re Adeeb, 787

F.2d at 1343 (citing Duggins v. Heffron, 128 F.2d 546, 549 (9th Cir. 1942); Harris v. Baker, 86

F.2d 936, 937-38 (9th Cir. 1936)).   The Plaintiff herein merely has to show by a preponderance of

the evidence that the Defendant intended to hinder, delay, or defraud a creditor.   See, In re Spitko,

357 B.R. 272, 301 (Bankr. E.D.Pa. 2006).

139.    What is known is that while testifying at the Feb 8. 2010 Hearing the Defendant

informed that the estimated amount of construction work to be done for Jarmark on the house at 5

Oak Road was $200,000.00, and thereafter, between that date and the May 19, 2010 conversion of

the FEC Case, Jarmark-revenue amounted to an eye-popping $616,860.15.

140.    Simply put, the Defendant absconded with the Jarmark construction work, he

intended to hinder, delay, or defraud the creditors of the FEC Case and the Individual Case, and he

transferred, removed, destroyed, mutilated, or concealed property of the bankruptcy estates of

those cases, and he did so after the dates of the filing of petitions in those cases.   And with that, as

more fully outlined above, it is respectfully asserted that, a discharge cannot be granted to the

Defendant in the Individual Case.

*[Remainder of Page Intentionally Blank]*

## <u>CONCLUSION</u>

141.    For the reasons set forth above, the Plaintiff respectfully seeks a determination at

trial that, the Defendant Scott Forbes is not entitled to a discharge of his debts pursuant to 11

U.S.C. § 727(a)(2) and § 727(a)(7).


Respectfully submitted,

ROBERTA A. DeANGELIS
UNITED STATES TRUSTEE
REGION 3

By:    */s/ Peter D'Auria*
Peter D'Auria
Trial Attorney

DATED: July 6, 2013

## LIST OF ATTACHED EXHIBITS

A – Plaintiff's Statement of Admitted (Undisputed) Facts

B – Plaintiff's Proposed Findings of Disputed Facts

C – Plaintiff's Proposed Conclusions of Law

D – Plaintiff's Trial Exhibits

UST-1:   Certificate of Formation of Forbes Custom Homes, LLC

UST-2:   IRS Assignment of EIN for Forbes Custom Homes, LLC

UST-3:   Transcript of Hearing held on February 8, 2010

UST-4:   Chase bank account statements, account ending X3036

UST-5:   Certain Forbes Enterprises Corp documents, 12/15/09 through 2/11/10

UST-6:   Home Buyer Warranty issued to Michael Jarmark

UST-7:   Certain Forbes Custom Homes, LLC documents, 3/16/10 through 5/5/10

UST-8:   Scott and Ginette Forbes' Voluntary Bankruptcy Petition

UST-9:   Scott and Ginette Forbes' Schedules and Statement of Financial Affairs

UST-10:   Scott and Ginette Forbes' Opposition to UST's 1112 Motion

UST-11:   Scott and Ginette Forbes' Disclosure Statement dated February 11, 2010

UST-12:   Scott and Ginette Forbes' Plan of Reorganization dated February 11, 2010

UST-13:   Scott and Ginette Forbes' MORs, July 2009 through December 2009

UST-14:   Forbes Enterprises Corp, Voluntary Bankruptcy Petition

UST-15:   Forbes Enterprises Corp, Schedules and Statement of Financial Affairs

UST-16A:   Forbes Enterprises Corp, MORs, July 2009 through October 2009

UST 16B:   Forbes Enterprises Corp, MORs, November 2009 through March 2010

UST 17:   Forbes Enterprises Corp, Opposition to UST's 1112 Motion

UST 18:   ~~Forbes Enterprises Corp~~ / Forbes Custom Homes Construction Contract with Jarmark dated March 9, 2010.